IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| RUSSELL CARLSON, | ) | C/A No. 4:08-1913-SB-TER |
| | ) | |
| PETITIONER, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| WARDEN LIEBER CORRECTIONAL | ) | |
| INSTITUTION, | ) | |
| | ) | |
| RESPONDENT, | ) | |
| | ) | |

Petitioner, Russell Carlson ("petitioner/Carlson"), is an inmate in the custody of the South

Carolina Department of Corrections (SCDC). Petitioner, appearing *pro se*, filed his petition for a

writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on May 16, 2008. Respondent filed a motion

for summary judgment on October 27, 2008, along with a return and supporting memorandum. The

undersigned issued an order filed October 28, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309

(4th Cir. 1975), advising petitioner of the motion for summary judgment procedure and the possible

consequences if he failed to respond adequately. On December 19, 2008, petitioner filed a response

in opposition to the motion for summary judgment.

---

[1] This habeas corpus case was automatically referred to the undersigned United States
Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02,
DSC. Because this is a dispositive motion, this report and recommendation is entered for review
by the court.

# I.  PROCEDURAL HISTORY

The procedural history as set out by the respondent has not been seriously disputed by the petitioner. Therefore, the undisputed procedural history as stated by the respondent is set forth herein.

Petitioner is currently incarcerated in the Lieber Correctional Institution pursuant to orders of commitment of the Clerk of Court for Georgetown County. Petitioner was indicted at the May 2002 term of the Georgetown County Grand Jury for Assault and Battery with Intent to Kill (ABWIK)(02-GS-22-391) and Burglary in the First Degree (02-GS-22-392). Mr. Julian Hanna, Esquire, represented him. Petitioner underwent trial by jury and on April 24, 2003, was found guilty of ABWIK and Burglary- First (1st) Degree. He was sentenced by the Honorable J. Michael Baxley, the trial judge, to confinement for periods of twenty (20) years and twenty (20) years, respectively, concurrent.

### *The Direct Appeal*

A timely Notice of Appeal was filed on petitioner's behalf and an appeal was perfected. Based on the opinion of the South Carolina Court of Appeals, petitioner raised the following issues for review:

1.      The trial court failed to conduct a proper hearing on the admissibility of Dewitt's out-of-court identification pursuant to <u>Neil v. Biggers</u>, 409 U.S. 188 (1972) and <u>State v. Ramsey</u>, 345 S.C. 607, 550 S.E.2d 294 (2001).

2.      The trial court erred in allowing a photograph of Carlson to be admitted into evidence.

3.      The trial court erred by not requiring the jury to review Dewitt's (victim) entire testimony.

4.      The bailiff engaged in an improper discussion with the jury during deliberations.

5.      Improper closing argument by the prosecutor.

6.      Prosecution violated <u>Brady</u> by failing to provide a forty-page transcript to defense counsel prior to trial.

7.      Trial judge erred in allowing the prosecution to continue cross-examining Wilson using the forty-page transcript of her prior statement after defense counsel objected.

8.      The trial court erred in informing him that any criminal conviction would be admissible against him if he took the witness stand.

(See Court of Appeals decision).

The Court of Appeals affirmed petitioner's convictions and sentences in a published opinion.

<u>State v. Carlson</u>, Op. No. 3948 (S.C. Ct. App. filed February 22, 2005). Petitioner filed a Petition

for Rehearing. The petition for Rehearing was denied on April 21, 2005. The Remittitur was filed

on June 2, 2005.


***The PCR Action***

Petitioner subsequently filed his application for post-conviction relief on September 12, 2005.

Respondent made its Return on January 3, 2006. An evidentiary hearing into the matter was

convened on September 18, 2006, at the Horry County Courthouse before the Honorable John L.

Breeden, Circuit Court Judge. Petitioner was present at the hearing and was represented by Ken

Mitchum, Esquire. Daniel E. Grigg of the South Carolina Attorney General's Office represented

respondent. At the hearing, petitioner testified on his own behalf. Julian Hanna, Esquire (Mr.

Hanna), trial counsel, testified at the hearing as well. The Court also had before it the records of the

Georgetown County Clerk of Court, the transcript of the proceedings against petitioner, petitioner's

records from the South Carolina Department of Corrections and Petitioner's appellate records. In the

application, petitioner alleged that he was being held in custody unlawfully for the following reasons:

1.    Was counsel ineffective for failing to object to the solicitor's improper closing arguments that referred to statements that were not in evidence?

2.    Was counsel ineffective for failing to object to solicitor's improper vouching for a state's witness during closing arguments?

3.    Was trial counsel ineffective for failing to object when trial judge commented upon the facts and evidence of the case during his charge to the jury; that was determined by the jury?

4.    Was Appellate counsel ineffective for raising issue not properly preserved for appellate review?

(PCR application).

The PCR court denied his PCR application by Order of Dismissal dated October 20, 2006.

(Tr. 698-707).

### *The Appeal from the Denial of PCR*

Petitioner appealed to the South Carolina Supreme Court from the denial of post-conviction relief by way of a Petition for Writ of Certiorari. Petitioner raised only one issue to the South Carolina Supreme Court in his Petition for Writ of Certiorari:

Did the PCR court err in failing to find counsel ineffective for not objecting to the State's improper vouching for the truthfulness of a State's witness during closing argument?

(Petition for Certiorari p. 2).

The State filed a Return to the Petition for Writ of Certiorari. Petitioner filed a Motion to Supplement the Appendix which was denied by the South Carolina Supreme Court on December 13, 2007. On March 3, 2008, the South Carolina Supreme Court denied petitioner's Petition for Writ of Certiorari and dismissed the appeal. On March 21, 2008, the Remittitur was filed. Petitioner filed this habeas action on May 16, 2008.

4

## II. HABEAS ALLEGATIONS

Ground One:  Unconstitutional Identification Procedures Used Before and During Trial

Supporting Facts:  The trial court failed to conduct a proper hearing on the admissibility of the victim's out of court identification, which lead to the allowing of the improper in-court identification and in doing thus denied Petitioner his right to a fair trial that is protected by the Fourteenth Amendment.

Ground Two:  Used Photo at trial

Supporting Facts:  The trial court erred in allowing a photo of petitioner into evidence

Ground Three:  Closing Remarks by solicitor

Supporting Facts:  During summation the prosecution made improper remarks to the jury and counsel objected to preserve the issue, yet the jury had already heard the comments that denied petitioner his Fourteenth Amendment to right to a fair trial.

Ground Four:  Brady Violation

Supporting Facts:  The Prosecution [withheld] a forty-page transcript from myself and my counsel. During cross-examination of my alibi witness Heather Wilson, the prosecution used a transcribed conversation between Wilson and an Investigator to impeach her.

Ground Five:  Ineffective assistance of counsel for failing to object to the Solicitor's improper closing summation that referred to statements that were not in evidence and in doing so denied Petitioner his Fourteenth Amendment Right to a fair trial.

Ground Six:  Ineffective assistance of counsel for failing to object to the Solicitor's improper "vouching" of a state's witness and in doing so denied Petitioner his Fourteenth Amendment Right to a Fair Trial

Ground Seven:  Ineffective assistance of appellate counsel on direct appeal when appellate counsel raised issues on appeal that were not preserved for appeal therefore denying him his one bite of the

apple and denied Petitioner his inalienable rights. Appellate counsel on post-conviction relief failed to file a <u>Johnson</u> Petition and petitioner was gagged from raising any issues on appeal from postconviction relief, but petitioner did file a Rule 59(e) Motion that was recognized by the Appellate Court in respect to petitioner's appeal from post-conviction relief. Therefore any of those grounds would be considered preserved for this habeas application.

(Petition).

## III.  SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by <u>pro se</u> litigants, to allow them to fully develop potentially meritorious cases.  <u>See</u> <u>Cruz v. Beto</u>, 405 U.S. 319 (1972), and <u>Haines v. Kerner</u>, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  <u>Weller v. Department of Social Services</u>, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and <u>Celotex v. Catrett</u>, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case

makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the defendants are "entitled to judgment as a matter of law" under Rule 56(c) because the petitioner has failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.


## IV.  STANDARD OF REVIEW

Since Carlson filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 117 S. Ct. 2059 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir. 1998); Green v. French, 143 F.3d 865 (4th Cir. 1998). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To a large extent, the amendment of § 2254 shifts the focus of habeas review to the state court application of Supreme Court law. See O'Brien v. DuBois, 145 F.3d 16 (1st Cir. 1998) ("the AEDPA amendments to section 2254 exalt the role that a state court's decision plays in a habeas proceeding by specifically directing the habeas court to make the state court decision the cynosure

of federal review."). Further, the facts determined by the state court to which this standard is applied are presumed to be correct unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The United States Supreme Court has addressed procedure under § 2254(d). See <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S.Ct. 1495 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases . . . A state- court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.
>
> [A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

<u>Id</u>. at 1519-20. Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." <u>Id</u>. at 1521.

The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts. One of those changes was the amendment of 28 U.S.C. § 2244 to establish a one-year statute of limitations for filing habeas petitions.

# V. FACTUAL BACKGROUND

Just for a factual back ground, a summary of the facts as found by the South Carolina Court

of Appeals is as follows:

> Junior DeWitt [victim], lived with his fiancee, Stephanie Davis, and her two
> children. On the morning of the incident, as Davis's daughter was getting ready for
> school, two men entered DeWitt's home wearing all black and carrying guns. DeWitt
> was in bed asleep when he was awakened by the sound of the door being kicked
> open, glass breaking, and gunshots. One of the intruders was a man with several gold
> teeth who was wearing a bandana. He was carrying guns in both hands and shot
> DeWitt multiple times as DeWitt stumbled out of bed. The intruders rifled through
> DeWitt's clothes, took approximately $500, and then left. DeWitt sustained severe
> injuries. He was in a coma for a month and is now paralyzed; he will never walk
> again.

> DeWitt recognized Carlson as the shooter and identified Demar "Demond" Moore
> as the other intruder. DeWitt had known Moore for approximately ten years before
> the incident. He recognized Carlson because Carlson and Moore had come to his
> house a couple of weeks before the shooting, and the three had engaged in
> conversation for around fifteen to twenty minutes.

> Carlson and Moore were tried together. The jury convicted Carlson of assault and
> battery with intent to kill, and burglary in the first degree, and sentenced him to
> twenty years in prison.

(Tr. 556).


# VI. ANALYSIS

Respondent argues that Grounds One, Two, Three, Four, Five, and Seven are procedurally

barred from federal habeas review. In his response in opposition, petitioner asserts that appellate

counsel failed to raised these issues in the petitioner for writ of certiorari and that he filed a Rule

59(e) motion with the Supreme Court which was denied. The undersigned will discuss each Ground

below.

A review of the petition reveals even though petitioner attempted to raise Grounds One and

Four in his direct appeal, the South Carolina Court of Appeals declined to review these issues as they were not raised at the trial court. In Ground One, petitioner asserts that "Unconstitutional Identification Procedures Used Before and During Trial." In Ground Four, petitioner asserts a <u>Brady</u> violation. The Court of Appeals stated as follows with regard to this Ground One:

> Carlson first argues the trial court failed to conduct a proper hearing on the admissibility of Dewitt's out-of-court identification pursuant to <u>Neil v. Biggers</u>, 409 U.S. 188 (1972) and <u>State v. Ramsey</u>, 345 S.C. 607, 550 S.E.2d 294 (2001). Generally, a trial court must hold an in camera hearing when the State offers a witness whose testimony identifies the defendant as the person who committed the crime, and the defendant challenges the in-court identification as being tainted by a previous, illegal identification or confrontation . . .

> Defense counsel did not object to the procedure used in the present case. During pretrial motions, the trial judge suggested that the court merely view the pictures rather than require testimony. Counsel for Carlson responded: "No objection, Your Honor."

> "An issue may not be raised for the first time on appeal, but must have been raised to the trial judge to be preserved for appellate review." <u>State v. Nichols</u>, 325 S.C. 111, 120-121, 481 S.E.2d 118, 123 (1997) (citation omitted); . . . .

> Not only did Carlson fail to object, but he consented to the procedure proposed by the trial judge. Consequently, Carlson failed to preserve this issue.

> . . .

> In the case <u>sub judice,</u> consent was given and constituted waiver of any procedural due process rights.

With regard to Ground Four, the state Court of Appeals held the following:

> Carlson contends the prosecution violated his rights under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), by failing to provide a forty-page transcript to defense counsel prior to trial. During cross-examination of Carlson's alibi witness, Heather Wilson, the prosecution used a transcribed conversation between Wilson and an investigator to impeach her. Counsel for Moore objected on the ground that he had not been provided a copy. The trial judge required the State to provide the transcript to the defense. Counsel for Moore further objected that he had not had time to review the document. The trial judge allowed cross-examination to continue, but announced that

he would permit defense counsel to recall the witness after a recess. Moore and Carlson both opted to reserve the right to recall Wilson for redirect; however, neither defendant recalled her.

. . .

Carlson's argument is not preserved. We reiterate, Carlson cannot use an objection by his co-defendant to preserve an issue for appellate review. State v. Carriker, 269 S.C. 553, 238 S.E.2d 678, 678 (1977). Additionally, Carlson did not enter a copy of the statement into the record, so review is not possible.

(State v. Carlson, supra).

As these issues raised in Grounds One and Four were not preserved for review in the state court, they are procedurally barred from habeas review. South Carolina has a contemporaneous objection rule. See Pike v. South Carolina Department of Transportation, 332 S.C. 605, 506 S.E.2d 516, 521 (1988)("For an issue to be preserved for appeal, it must have been raised to and ruled upon by the trial court.")." Id at 482.

## **Ground Two**

In Ground Two of this habeas petition, petitioner asserts that the trial court erred in allowing a photo of petitioner into evidence. Petitioner does not state in his petition whether or not his objection is to the admission of this evidence or how the trial judge erred in admitting a photograph of him. However, the undersigned finds that this issue, even if not procedurally defaulted, is not cognizable in federal habeas as it deals with the evidence presented at the trial level. The undersigned concludes that this is an issue of evidence and the court will not grant relief based on the state's own standards for sufficiency of the evidence. See Wilson v. Greene, 155 F.3d 396, 407 (4th Cir. 1998). Thus, it is recommended that this issue be dismissed and respondent's motion for summary judgment granted with respect to this ground.

**Ground Three**

In ground three, petitioner raises the following allegation:

Ground Three:        Closing Remarks by solicitor

Supporting Facts:     During summation the prosecution made improper remarks to the jury and counsel objected to preserve the issue, yet the jury had already heard the comments that denied petitioner his Fourteenth Amendment to right to a fair trial.

(Petition).

Respondent argues that this issue is procedurally barred from habeas review. Additionally, respondent asserts that this issue is vague and ambiguous and should be dismissed. Respondent further asserts that if petitioner is alleging the same argument he raised on appeal, this ground was waived and abandoned when petitioner made no objection with regard to this portion of the solicitor's argument and petitioner cannot rely on his co-defendant. Additionally, respondent argues that petitioner did not move to strike the alleged improper comments or move for a mistrial so he waived and abandoned the issue. Then, respondent argues that even if the issue had been preserved, the Court of Appeals correctly found there was no reversible error.

Based on a review of the State Court of Appeals decision, the State Court found this issue to be procedurally defaulted in that it was not raised at trial. South Carolina has a contemporaneous objection rule. See Pike v. South Carolina Department of Transportation, 332 S.C. 605, 506 S.E.2d 516, 521 (1988)("For an issue to be preserved for appeal, it must have been raised to and ruled upon by the trial court.")." Id at 482. The Court of Appeals found the following:

Carlson's next ground for appeal deals with the following remarks made by the

prosecutor during closing arguments:

> Now, the Defense made a big deal about, you know, "don't get carried away with the brutality of it. We're not saying it's not brutal. We're so sorry this happened," which I'll submit to you I didn't-these Defendants have the right not to testify, and they can, you know, we have the burden of proof and they've got a constitutional right not to testify but they can't come in and apologize.

Counsel for Moore immediately objected, the trial judge sustained the objection and gave a curative instruction":There's no inference to be taken. The Defendants have a right to remain silent and have a right not to testify." The judge charged the jury that defendants have a constitutional right not to testify, and that their failure to testify could not be used against them, even to the slightest degree. Defense counsel did not make any further motions.

Once again, this issue has not been preserved for review. "Failure to object to comments made during argument precludes appellate review of the issue." <u>State v. Varvil</u>, 338 S.C. 335, 339, 526 S.E.2d 248, 251 (Ct. App. 2000). In the instant case, counsel for Moore objected, but Carlson did not.

(Tr. 568).

Claims arising from state law are not cognizable. <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). As this claim pertains to jury instructions, this state law issue is not cognizable for federal habeas relief; a state court decision based on a question of state law which is binding in Federal Court. Additionally, if it was appropriate for habeas review, it was not preserved for review and is procedurally barred. Accordingly, it is recommended that this issue be dismissed and respondent's motion for summary judgment granted with respect to this issue.

## **Ground Five**

In Ground Five of this habeas petition, petitioner raises the following issue:

Ground Five:   Ineffective assistance of counsel for failing to object to the Solicitor's

> improper closing summation that referred to statements that were not in evidence and in doing so denied Petitioner his Fourteenth Amendment Right to a fair trial.

(Petition).

Respondent asserts that this issue has been procedurally defaulted in that this claim of ineffective assistance of counsel was waived and abandoned when it was raised on appeal from the denial of post-conviction relief. Respondent argues that this issue was not contained within petitioner's petition for writ of certiorari to the South Carolina Supreme Court from the denial of post-conviction relief.

The undersigned finds that this issue is procedurally barred from habeas relief in that it is procedurally defaulted. The sole issue raised in the petition for writ of certiorari was "Did the PCR court err in failing to find counsel ineffective for not objecting to the State's improper vouching for the truthfulness of a State's witness during closing argument?" (Petition for writ of certiorari). This is not the same issue that petitioner raises in this habeas petition. To avoid a procedural default, an issue must be presented directly and squarely to the South Carolina Supreme Court on certiorari review. See Joseph v. Angelone, 184 F.3d 320, 328 (4th Cir.1999), *cert. denied*, 528 U.S. 959, 120 S.Ct. 392, 145 L.Ed.2d 305 (1999) ["In order to avoid procedural default [of a claim], the 'substance' of [the] claim must have been 'fairly presented' in state court . . . That requires 'the ground relied upon [to] be presented face-up and squarely. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick."] (*quoting* Townes v. Murray, 68 F.3d 840, 846 (4th Cir.1995) (*quoting* Mallory v. Smith, 27 F.3d 991, 995 (4th Cir.1994)).

If a petitioner before a federal court fails to raise a claim in state court and is precluded by state procedural rules from returning to state court to raise the issue, he has procedurally by-passed

his opportunity for relief in state courts. In such a case, the exhaustion requirement is technically met, but a federal district court is barred from considering the habeas claim, absent a showing of cause and actual prejudice. Coleman v. Thompson, 501 U.S. at 750. The procedural default doctrine and its attendant "cause and prejudice" standard are grounded in comity and federalism concerns. Id. at 730-31. These principles apply whether the default occurred at trial, on appeal, or on state collateral attack. Murray v. Carrier, 477 U.S. at 490-92. Furthermore, in the absence of cause and prejudice, the petitioner must show that he is factually "actually innocent" in order to have his claim heard on collateral review. Bousley, 523 U.S. at 622-24. "To establish actual innocense, petitioner must demonstrate that, 'in light of all the evidence,' it is more likely than not that no reasonable juror would have convicted him." Id. At 623 (quoting Schlup v. Delo, 513 U.S. 298, 327-328 (1995) (quoting Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U.Chi.L.Rev. 142, 160 (1970)).  As previously stated, petitioner argues in his response that he has shown cause because it was "PCR Appellate Counsel's" failure to address these issues in the petition for writ of certiorari . Additionally, petitioner filed a Motion to Supplement the Appendix seeking to include a *pro se* Rule 59(e) motion but the motion was denied by the South Carolina Supreme Court. However, petitioner has not met his burden because ineffective assistance on collateral review is not cause. Joseph v. Angelone, 184 F.3d 320, 325 (4th Cir. 1999). As petitioner has no right to assistance of counsel in state habeas proceedings, a lack of such assistance is insufficient to establish cause. Id.

**Ground Six**:

In Ground Six of the habeas petition, petitioner asserts the following:

Ground Six:    Ineffective assistance of counsel for failing to object to the Solicitor's

improper "vouching" of a state's witness and in doing so denied petitioner his Fourteenth Amendment Right to a fair trial, there is a reasonable probability that but for this issue the results of the trial would have been different.

(Petition).

Respondent argues this issue should be dismissed because the state PCR Court found and concluded that counsel was not ineffective in failing to object to alleged "vouching" by the solicitor in his closing argument. That decision is entitled to deference.

A review of the record reveals that this issue was raised and ruled upon in the PCR Court and raised in the petition for writ of certiorari. Thus, this issue is ripe for federal habeas review.

When presented with an application for habeas relief, the first inquiry by the court is to determine whether the claim raised in the petition was "adjudicated on the merits" by the state court. 28 U.S.C.A. §2254(d). If the claim was properly presented to the state court and the state court adjudicated it, the deferential standard of review set forth in §2254(d) applies and federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Id. § 2254(d)(1),(2); see Williams v. Taylor, 529 U.S. at 398.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective

assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) (quoting Strickland, reversed on other grounds, 476 U.S. 28 (1986)). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Strickland, at 694.

The court further held at page 695 that:

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct . . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added.)

A state court's finding on a claim of ineffective assistance of counsel is a combination of a finding of fact and a conclusion of law. Although applicable precedents may require this court under 28 U.S.C. §2254, to make its own determination of both the performance and (if necessary) the "prejudice" components highlighted in Strickland, 466 U.S. 668, the historical facts decided by a court of a state in a claim of ineffective assistance of counsel remain subject to deference. See Hoots

v. Allsbrook, 785 F.2d 1214, 1219 & n. 6 (4th Cir. 1986) ("old" § 22254(d) standard) and Williams, supra.

The undersigned has reviewed the record and concludes that respondent's motion for summary judgment should be granted on this issue.

Plaintiff has argued that the following statements by the solicitor in the closing argument:

> . . . Okay, so what, what does that tell you? What it tells you is the State put up the evidence that we had and we've told the truth and everybody testified truthfully as to what they could say.

(Tr. 439, line 20).

> . . .what he did was he came in and he testified as to what it was, it was a stretchy sheer fabric that you could see through, certainly see those gold teeth, and that's what he testified truthfully to.

(Tr. 440, line 19).

> [concerning the statement of the victim] Now again, they want to wave this thing around and say this is such a ridiculous statement, it's so inconsistent. I challenge you to find the inconsistencies in the statement. I attempted to go through it. I tried to put it, I tried to put the whole thing in evidence so you could have it, but you don't have it, but I did manage to ask him at least six or eight questions before they objected and got to the fact that 99 percent of what he said was accurate and he didn't write this. This is written by the investigator because Junior couldn't move his hands at this point.

(Tr. 440, line 24-tr. 441).

> I mean, if I'm going to say that this guy shot him, why am I going to say he had a mask covering his face to make it difficult–more difficult on my, on himself, on myself. He–like , the point is, he's telling the truth. We don't, we don't create the facts. . . .

(Tr. 442, line 16).

> . . . So you know, again, the State's case is what it is, and the State has the burden and we try to present the evidence as truthful as we can.

(Tr. 444, line 22).

> [referring to the testimony of the alibi witness] She didn't have her calendar in front of her. She didn't have any lawyers to tell her what the date the incident occurred.

(Tr. 450, line 23). The attorney for co-defendant objected on the basis that the attorneys would have "done something in order to have her perjure herself or to mischaracterize the truth. The trial judge sustained the objection and gave the following instruction:

> Again, I say to the jury, lawyers who argue in closing arguments may argue from the evidence or what inferences they believe are appropriate from the evidence. Ultimately, it's up to you to decide what is an appropriate inference from the evidence and what the evidence reveals. These are your decisions. Again, there are – arguments are only what the lawyers believe they show and is their opinion on that.

(Tr. 451, line 3).

> . . . [s]o, the alibi is he dropped him off at school already but he wasn't at school. That's just a lie. That's all it is is a lie.

(Tr. 454, line 1).

> Now, ask yourself this, first of all, if you want to present an alibi why wouldn't you present a truthful one? I mean, why do you want to come in here and lie? If he wasn't—if they weren't there, they don't have to present any evidence, but if you choose to way wouldn't you bring somebody who could tell a truthful story so that I can't bring the principal in and say this is a lie? . . .

(Tr. 454, line 5).

> The question is did these two go into the house that day, that, that - - -early that morning and shot Junior Dewitt, and I submit to you Junior Dewitt's testimony is truthful. He told the truth. If he was going to make something up he would have made it up a lot better than that . . .

(Tr. 455, line 6).

A review of the record from the PCR hearing reveals that petitioner's PCR counsel argued

that  trial counsel failed to object to the Solicitor's alleged vouching for witnesses during his closing

argument, and that the defense witnesses were lying. He argued that trial counsel should have moved

for a mistrial based upon the Solicitor's statements. Trial counsel testified at the PCR when asked

why he did not object to the solicitor's comments that the state's witnesses were being truthful as

follows:

> Well I think just a general rule of thumb in closing arguments you, you try hard to defer to opposing counsel, give them latitude, and as long as they don't get egregious in their errors so as to not interrupt the flow of their closing argument; and, and it's certainly a courtesy to opposing counsel is one issue more importantly the affect of interrupting the closing argument on the, the affect upon the jury is, is more important to the client and, and you don't want to alienate the jury by seeming to be knit picking.

(Tr. 676-677).

The PCR Court noted that it did not find petitioner's testimony credible. The PCR Court did

find Mr. Hanna, trial counsel, to be credible. The PCR Court found Mr. Hanna's representation of

petitioner was well within the reasonable professional standards of defense attorneys in the State of

South Carolina. The Court noted that Mr. Hanna met with his client on numerous occasions and fully

investigated the case. Mr. Hanna discussed his investigation, trial strategy, possible defenses and the

state's case with petitioner. (Tr. 703). A review of the PCR court's Order of dismissal reveals the

PCR Judge found as follows with respect to this issue:

> This court further finds that Mr. Hanna was not deficient in the manner in which he handled the Solicitor's alleged vouching. Vouching occurs when a Solicitor attempts to bolster the credibility of a witness by "placing the government's prestige behind a witness by making explicit personal assurances of a witness' veracity," or by "implicitly vouches for a witness' veracity by indicating information not presented to the jury supports the testimony." Gilchrist v. State, 350 S.C. 221, 227, 565 S.E.2d 281, 285 (2002), *quoting* State v. Shuler, 344 S.C. 604, 630, 545 S.E.2d 805, 818 (2001). The Court finds that the comments made by the solicitor did not constitute vouching, despite the opinion of Applicant or Mr. Hanna. At no point during closing argument did the Solicitor state that because of his position with the state or due to personal knowledge he could vouch that the witness was telling the truth. In addition,

Mr. Hanna has provided sufficient explanation as to why he did not object to those statements. Trial counsel's decision not to object to certain statements made by the Solicitor in closing arguments did not amount to ineffective assistance of counsel.

Traditionally the relevant question to ask in "solicitor comment" cases is whether the comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." State v. Hutto, 356 S.C. 384, 589 S.E.2d 202 (S.C. App. 2003) (citing Donnelly v. DeChristoforo, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). This Court further finds that in viewing the case as a whole, even if it were determined that the closing arguments were improper and trial counsel should have objected, trial counsel's inaction did not rise to the level of ineffective assistance of counsel requiring a granting of post-conviction relief and a new trial.

It is well established in South Carolina that an improper closing argument does not automatically require reversal of a conviction. State v. Huggins, 325 S.C. 103, 481 S.E.2d 114 (1997); State v. Copeland, 321 S.C. 318, 468 S.E.2d 620 (1996). This principle is applicable in determining whether trial counsel was ineffective in not objecting to an improper closing argument. Humphries v. State, 351 S.C. 362, 570 S.E.2d 160 (S.C. 2002). In the current case, the closing was not so improper to infect the trial with unfairness and therefore any failure to object, if it exists, is harmless error. Simmons v. State, 331 S.C. 333, 338, 503 S.E.2d 164 (S.C. 1998).

A court's review of closing arguments must be "highly deferential," for "counsel has wide latitude in deciding how best to represent a client" and "deference to counsel's tactical decisions in his [trial counsel's] closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage." Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S.Ct. 1, 4 (2003). Therefore, this Court does not find that Applicant has shown that the solicitor's comments constituted vouching. Certainly, Applicant has failed to show that Mr. Hanna was ineffective or that the trial was so infected with unfairness that he is entitled to a new trial.

(Tr. 704-706).

As stated above, the PCR court found that the comments made by the solicitor did not constitute vouching, despite the opinion of Applicant or Mr. Hanna. The PCR court found that at no point during closing argument did the Solicitor state that because of his position with the state or due to personal knowledge he could vouch that the witness was telling the truth.

Vouching occurs when a prosecutor indicates a "personal belief in the credibility or honesty

of a witness. United Sates v. Sanchez, 118 F.3d 192, 198 (4th Cir. 1997) *quoting* United States v. Mitchell, 1 F.3d 235, 240 (4th Cir. 1993)). *Also see generally* United States v. Necoechea, 986 F.2d 1273, 1279 (9th Cir.1993) [no vouching when prosecutor argued that "if [the witness is lying, why] isn't she doing a better job of it", and stated "I submit . . . that she's not lying", as the "submit" statements were merely permissible inferences from the record, based on the argument that the witnesses had not done a "better job," and the prosecutor's argument that the witness was telling the truth was one he had to make to convict the defendant); United States v. Livingston, 21 Fed.Appx. 564, 566 (9th Cir.2001) [no vouching when prosecutor stated "we would submit [the officer is] a decent, honest cop," and "we would submit that [the witness], when you evaluate his testimony as a whole, was truthful and credible," as the statements were prefaced by "we submit," and were book ended by statements that made it clear the credibility determination was for the jury.]

Whether these comments constitute vouching is a very close case. Out standard of review is to determine whether or not the PCR Courts determination was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(1),(2); see Williams v. Taylor, 529 U.S. at 398. Under this standard of review, the undersigned does not find that the PCR Courts findings violate this standard. Furthermore, even assuming the statements to be improper, the undersigned finds that while the statements may be improper, they did not so infect the trial with unfairness as to make the resulting conviction a denial of due process. In United States

v. Sanchez, supra, [2] the Fourth Circuit stated that the relevant question is whether the remarks "so infected the trial with unfairness a to make the resulting conviction a denial of due process." Id. The court must make a prejudicial impact determination on the basis of four factors:

(1)     the degree to which remarks misled the jury and prejudiced the defendant;

(2)     whether remarks were isolated or extensive;

(3)     whether absent the remarks, competent evidence established guilt; and

(4)     whether comments were deliberately placed before the jury to divert attention to extraneous matters.

Id.

After a careful review of the record in this case pursuant to the standards set forth by the Fourth Circuit in Sanchez, this court does not find that the cited comments, even assuming *arguendo* that they were improper, were so damaging as to require reversal in this case. First, it is unlikely that the solicitor's statements misled the jury. The state trial judge gave a curative instruction at one point, as set out above, and instructed the jury to weigh the credibility of the witnesses during his charge.  The trial judge gave the following instruction to the jury in the charge, quoted verbatim, in part:

> . . . It's up to you to determine from the evidence in the case which came from the witness stand what the truth of the matter is, and the evidence which you are to consider in doing that, is, again, the testimony of the witnesses and the various exhibits that have been introduced into the record of this case throughout this trial. You also will have the exhibits with you in the jury room. (Tr. 459, line 16).

. . .

---

[2] *See also* United States v. Harrison, 716 F.2d 1050 (4th Cir.1983), *cert. denied*, 466 U.S. 972, 104 S.Ct. 2345, 80 L.Ed.2d 819 (1984),

Now, one of the things you're going to have to do in being the judges of the facts is determine the credibility and believability of the witnesses who have testified in this case. As happens in some cases we have witnesses who testify to mutually exclusive things and you must decide which of the witnesses are more believable or credible.

I would say to you that some of the things you may want to consider in doing this, and these are only suggestions because ultimately it's up to you as to what criteria you use, you may want to determine or look what was the manner and appearance of the witness as they testified? Were they hesitant or were they straightforward? Did–how did the witness come to know the facts that the witness was testifying to? What was his or her ability to know these facts? Is there some reason that a witness may want to help or hurt one side or another in the case and that is might the witness have a bias or a prejudice in your opinion? Was the testimony of the witness consistent or inconsistent even with itself? Was the testimony of a witness weakened or strengthened by other testimony in the case as you find that other testimony to be, and finally, how reasonable is what that witness is saying in light of the global evidence of the case as you determine the global evidence to be?

Please understand that you, the jury may believe as much or as little of each witness's testimony as you think proper. You may believe one witness against an entire group of witnesses or you may do just the opposite. You may believe part of what a witness says and totally and completely disbelieve the rest. All of these are your prerogatives, and I would say to you keep in mind that throughout this process of gauging the credibility and believability of the witnesses you have but one objective and that objective is to search for and find the truth regardless of from which witness of from which side of the case that truth comes.

(Tr. 461-462).

Second, the solicitor's statements were made during a lengthy closing argument. The third factor in

Sanchez also militates against finding prejudice as the government's proof against petitioner was

strong. The victim identified the petitioner. Finally, with regard to the last Sanchez factor, nothing

in the record suggests that the comments of the solicitor were "deliberately made to divert the jury's

attention." Therefore, the court concludes that the petitioner suffered no prejudice.[3]

---

[3] Additionally, closing arguments are adversarial in nature. See e.g. United States v. Moore, 710 F.2d 157, 159 (4th Cir.1983) (commenting on prosecutor's statement that a defense witness insulted the jury by telling the most incredible lies); United States v. Rogers, 853 F.2d

The undersigned  has carefully reviewed the transcript of the closing arguments, the allegations of the petitioner, the jury instructions from the court, and the memoranda of the parties, and does not find that the solicitor's comments so infected the trial with unfairness as to deny the petitioner due process. Accordingly, the decision of the State Court in that regard was neither contrary to, nor an unreasonable application of, clearly federal law. Therefore, petitioner has failed to show that his counsel's failure to object prejudiced him under the Strickland analysis, and this claim should be dismissed.

**Ground Seven:**

Petitioner raises the following as Ground Seven in the habeas petition:

> Ground Seven:  Ineffective assistance of appellate counsel on direct appeal when appellate counsel raised issues on appeal that were not preserved for appeal therefore denying him his one bite of the apple and denied Petitioner his inalienable rights. Appellate counsel on post-conviction relief failed to file a Johnson Petition and petitioner was gagged from raising any issues on appeal from postconviction relief, but petitioner did file a Rule 59(e) Motion that was recognized by the Appellate Court in respect to petitioner's appeal from post-conviction relief. Therefore any of those grounds would be considered preserved for this habeas application.

Respondent asserts that this issue is procedurally defaulted with respect to ineffective assistance of appellate counsel on direct appeal and barred from habeas review with respect to ineffective assistance of collateral counsel. The undersigned agrees.

---

249, 251 and 253 (4th Cir.1988) (remarking that prosecutor's reference to defendant as a liar, thief and crook, while excessive and uncalled for, was harmless overkill and not plain error). In fact, the Fourth Circuit has stated that whether trial counsel "simply didn't think to object or deliberately did not object" does not matter. Inge v. Procunier, 758 F.2d 1010, 1016 (4th Cir.1985).

Petitioner's issue pertaining to ineffective assistance of appellate counsel for "raising" issues on appeal that were not preserved for appeal therefore denying him his one bite of the apple and denied Petitioner his inalienable rights" was not raised in petitioner' petition for writ of certiorari therefore, it is procedurally defaulted. If a petitioner before a federal court fails to raise a claim in state court and is precluded by state procedural rules from returning to state court to raise the issue, he has procedurally by-passed his opportunity for relief in state courts. In such a case, the exhaustion requirement is technically met, but a federal district court is barred from considering the habeas claim, absent a showing of cause and actual prejudice. Coleman v. Thompson, 501 U.S. at 750. The procedural default doctrine and its attendant "cause and prejudice" standard are grounded in comity and federalism concerns. Id. at 730-31. These principles apply whether the default occurred at trial, on appeal, or on state collateral attack. Murray v. Carrier, 477 U.S. at 490-92. Furthermore, in the absence of cause and prejudice, the petitioner must show that he is factually "actually innocent" in order to have his claim heard on collateral review. Bousley, 523 U.S. at 622-24. "To establish actual innocense, petitioner must demonstrate that, 'in light of all the evidence,' it is more likely than not that no reasonable juror would have convicted him." Id. At 623 (quoting Schlup v. Delo, 513 U.S. 298, 327-328 (1995) (quoting Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U.Chi.L.Rev. 142, 160 (1970)). Petitioner has not met this burden. As previously stated, petitioner argues in his response that he has shown cause because it was "PCR Appellate Counsel's" failure to address these issues in the petition for writ of certiorari. Additionally, petitioner filed a Motion to Supplement the Appendix seeking to include a *pro se* Rule 59(e) motion but the motion was denied by the South Carolina Supreme Court. However, petitioner has not met his burden because  ineffective assistance on collateral review is not cause. Joseph v. Angelone, 184

F.3d 320, 325 (4th Cir. 1999). As petitioner has no right to assistance of counsel in state habeas proceedings, a lack of such assistance is insufficient to establish cause. Id.

As to that portion of Ground Seven in which petitioner asserts "Appellate counsel on post-conviction relief failed to file a <u>Johnson</u> Petition and petitioner was gagged from raising any issues on appeal from postconviction relief, but petitioner did file a Rule 59(e) Motion that was recognized by the Appellate Court in respect to petitioner's appeal from post-conviction relief. Therefore any of those grounds would be considered preserved for this habeas application," the issue must be dismissed as it raises an issue of ineffective assistance of collateral counsel. The undersigned recommends that this issue be dismissed as "the ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under Section 2254." 28 U.S.C.A. § 2254(i) (West Supp.2001). Moreover, deficiencies in a post-conviction proceeding are not cognizable under 28 U.S.C. § 2254. <u>Heyward v. Burtt</u>, 2007 WL 2021888 (D.S.C. July 6, 2007) *citing* <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 107 S.Ct. 1990 (1987); and <u>Bryant v. Maryland</u>, 848 F.2d 492, 493 (4th Cir.1988). Further, a habeas court cannot grant relief based on errors occurring during state collateral review proceedings. <u>See Wright v. Angelone</u>, 151 F.3d 151, 159 (4th Cir.1998). Accordingly, it is recommended that respondents' motion for summary judgment be granted as to Ground Seven.

## VII. CONCLUSION

Based on the foregoing, it is recommended that respondent's motion for summary judgment (document #19) be GRANTED and petitioner's petition for Writ of Habeas Corpus should be denied, and this Petition dismissed.

It is further recommended that any outstanding motions be deemed MOOT.

Respectfully submitted,


s/Thomas E. Rogers, III
Thomas E. Rogers, III
August 13, 2009                                                    United States Magistrate Judge
Florence, South Carolina


**The parties' attention is directed to the important notice on the next page.**